## SARAH HUSBAND
### *v.*
## ELIZABETH EPLING.

1. NEGOTIABLE INSTRUMENT—*certainty as to time of payment.* It is essential to the negotiability of an instrument in writing for the payment of money, that the event on which it is to become payable must inevitably happen some time or other.

2. A written obligation for the payment of a sum of money "when the estate of Thomas Mason is settled up," is not negotiable or assignable, as it is not morally certain the event will ever happen.

3. MARRIED WOMEN—*contract relating to separate estate binding.* A contract made by a married woman in compromise and settlement of a *bona fide* claim against an estate in which she is entitled to a distributive share, is one in respect to her separate estate, and is binding on her, notwithstanding her coverture.

4. CONSIDERATION—*compromise.* The compromise of a *bona fide* claim against an estate with the heirs entitled to distribution therein, whereby such claim is withdrawn, constitutes a good and sufficient consideration to support an agreement by the heirs to pay the claimant a certain sum of money less than the claim.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. N. M. BROADWELL, for the appellant.

Messrs. STUART, EDWARDS & BROWN, and Messrs. HAMILTON & RICE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of debt, brought by Sarah Husband, who sues for the use of Jane Husband, against Elizabeth Epling.

Trial was had, by agreement of parties, by the court, without the intervention of a jury, and judgment was given for the defendant.

The principal question, on the errors assigned by the defendant, is, whether the instrument in suit, under the provisions of our statute, is assignable so as to invest the assignee with the legal title, and render it indispensable to a recovery that the suit shall be prosecuted in her name.

The following is a copy of the instrument:

"Whereas, there has been a matter of controversy between Sarah Husband, of the one part, and Emily Jane Brunk, Elizabeth Epling and William T. Mason, children and heirs of Thomas Mason, deceased, of the other part. Witnesseth: that whereas, the said Sarah Husband claims a compensation for keeping and raising said children during the lifetime of said Thomas Mason, deceased; and, whereas, the said parties have agreed upon a settlement, as follows: The said Emily Jane Brunk, Elizabeth Epling and William T. Mason agree to pay said Sarah Husband the sum of eighteen hundred dollars, that is to say, six hundred dollars each, which, when paid, is to be in full satisfaction of all claims and demands which the said Sarah Husband, or her children, have or claim against said persons for keeping and raising to this date; which amount is to be paid over when the estate of the said Thomas Mason is settled up.

In witness whereof, the parties have hereunto set their hands and seals, this 17th day of November, 1871.

| | |
|---|---|
| SARAH HUSBAND, | [SEAL.] |
| JOHN Q. A. HUSBAND, | [SEAL.] |
| WM. H. HUSBAND, | [SEAL.] |
| J. E. D. HUSBAND, | [SEAL.] |
| JANE HUSBAND, | [SEAL.] |
| SARAH R. HUSBAND, | [SEAL.] |
| WM. T. MASON, | [SEAL.] |
| J. BRUNK, | [SEAL.] |
| E. EPLING, | [SEAL.] |

Upon the back of said instrument is the following indorsement:

"We assign this claim to Jane Husband, and authorize her to receive, collect and receipt for the same.

November 17, 1871.                    Sarah Husband."

The statute makes "all promissory notes, bonds, due bills, and other instruments in writing, etc., whereby the maker promises or agrees to pay any sum of money or article of personal property, or any sum of money in personal property," assignable "by indorsement thereon, under the hand" of the payee, "in the same manner that bills of exchange are, so as absolutely to transfer and vest the property thereof in the   *   *   assignee;" and authorizes such assignee to bring suit and recover in his or her own name. (Gross' Stat. of 1869, p. 461, sections 3, 4, 5.)

It is essential to an instrument of either of the classes enumerated, that the event on which it is to become payable must inevitably happen some time or other. *Kelley* v. *Hemmingway*, 13 Ill. 604; *Kingsbury* v. *Wall*, 68 Ill. 311.

The event here is "when the estate of Thomas Mason is settled up." Can it be said to have been morally certain, when the instrument was executed, that the estate ever would be settled up? The law requires estates to be settled, and fixes a period within which it shall be done; but it does not, of and by itself, settle them. The presumption is that the law in this regard, as in others, will be obeyed; but this presumption does not amount to absolute certainty. The enforcement of the law depending on human agencies, is liable to be affected or controled by many circumstances, and instances where it is not only not fully enforced, but is openly violated, are within the experience of all, so that it is impossible to predict, with moral certainty, that a thing will be done, simply because it is the command of the law that it shall be.

Our conclusion is, that the instrument was not assignable; and we are also of opinion the case is not within any principle recognized in *Williams* v. *Smith*, 3 Scammon, 524, cited by

counsel. No question was there presented or discussed as to the negotiable character of the instrument.

The only other question to be considered arises on the cross error assigned by appellee.

The second of the defendant's pleas alleged the coverture of the defendant at the time of the execution of the instrument sued on. To this the plaintiff replied, that at the time, etc., the defendant was the owner, in her own right, of a distributive share or legacy, to be paid out of so much of the estate of one Thomas Mason, deceased, as should remain after the payment of all claims against said estate; which said share or legacy amounted to over $5000; that the plaintiff had a *bona fide* claim against said estate for a large amount, to-wit: $2000, and upwards, which she was about to prosecute in the proper court at the time of making said agreement; and that the said agreement was made and entered into by the defendant and the other makers thereof, in compromise and settlement of said claim, so had and held by plaintiff; and plaintiff, relying upon said settlement and agreement, did forbear to prosecute her said claim, and surrendered the same as settled and discharged, etc.

Defendant demurred, but the court overruled the demurrer, and the defendant, electing to stand by her demurrer, refused to rejoin.

The question is, was the demurrer properly overruled?

We think it is sufficiently alleged that the preservation of the sole and separate property of the defendant, acquired in good faith, through a source other than her husband, was the consideration for her promise. If, as is alleged, she was the owner in her own right of a distributive share in Mason's estate, after the payment of his debts, and the plaintiff had a *bona fide* claim against the estate, it can admit of no dispute that the allowance of that claim against the estate would, proportionately reduce the amount of her distributive share. A married woman in being allowed to make such contracts as are essential to her enjoyment and use of her separate property, in the same manner as if she were unmarried, must be bound

by her bad as well as her good contracts, except when they may be obnoxious to other objections than the single one of her coverture. To the extent that she is authorized to contract, she is to be regarded precisely as if she were unmarried; and we have held that under the acts of 1861 and 1869, relative to the separate property of married women, she is empowered to make contracts with regard to her separate property, upon which she will be held liable in an action at law. *Cookson* v. *Toole,* 59 Ill. 515; *Halley* v. *Ball,* 66 id. 250; *Haight* v. *McVeagh,* 69 id. 624.

That the compromise of plaintiff's claim formed a sufficient consideration to support the defendant's promise, is sustained by *McKinley* v. *Watkins,* 13 Ill. 140, *Cassell* v. *Ross,* 33 id. 244, *Burnside* v. *Potts,* 23 id. 415, and *Miller et al.* v. *Hawker,* 66 id. 185.

In our opinion, therefore, the demurrer to the replication was properly overruled, but for the error in giving judgment for the defendant, the judgment is reversed and the cause remanded.

*Judgment reversed.*