### City of Chicago, Defendant in Error, v. Albert J. Bartels, Plaintiff in Error.

### Gen. No. 14,282.

1. APPEALS AND ERRORS—*what not essential to save for review question of validity of ordinance.* The validity of an ordinance upon which a prosecution is based is saved for review notwithstanding no propositions of law have been presented.

2. WEIGHTS AND MEASURES—*effect of act upon City and Village Code.* The act pertaining to weights and measures did not, expressly or impliedly, modify, change, or repeal any of the provisions of the City and Village Act.

3. WEIGHTS AND MEASURES—*when ordinance valid exercise of police power. Held,* that the ordinance in question in this case was not inconsistent with the statute pertaining to weights and measures, and that such ordinance was not invalid.

4. EVIDENCE—*when manner of obtaining, does not affect sufficiency of.* In a prosecution for the violation of an ordinance in selling groceries by short measure, *held,* that the mode of obtaining evidence was proper and that such evidence justified the conviction.

Action of debt. Error to the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed January 8, 1909.

CHARLES WOODWARD, for plaintiff in error; DELBERT A. CLITHERO, of counsel.

GEORGE H. WHITE, for defendant in error; HENRY M. SELIGMAN, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The defendant in error, the City of Chicago, commenced an action of debt of the fifth or quasi-criminal class in the Municipal Court of Chicago against plaintiff in error for an alleged violation of section 2478 of the Revised Municipal Code of the City of Chicago of 1905. The ordinance as shown by the record is in words and figures as follows:

"Section 1. That section 2478 of the Revised Municipal Code of Chicago of 1905, as amended November 26, 1906, be amended so as to read as follows:

"2478. *(Deceit or Fraud in Regard to Measurement or weight of Commodities.)* All corn in the ear, potatoes, coal, large fruits, coarse vegetables, and all bulky articles sold or offered for sale by dry measure shall be sold by heaped measure, and all commodities sold by heaped measure shall be duly heaped up in said measure in the form of a cone, the top of the outside measure by which the same shall be measured to be the limit of the base of such cone, and such cone to be as high as the nature of the article to be measured will admit the cone to be heaped.

"Any person or corporation who shall practice deceit or fraud of any kind whatsoever in the sale of any commodity or article of merchandise of any kind what-

soever, whether sold by dry measurement or liquid measurement or linear measurement, or superficial measurement, or cubic measurement, or by weight, or by any unit or enumeration used in determining or measuring quantity, by selling or offering for sale any commodity or article of merchandise of any kind whatsoever, in quantities of less weight or measure or enumeration than the weight or measure or enumeration represented by the vendor, or his agent or employe, upon such sale, or offer of sale, or who shall sell or offer for sale any commodity in any receptacle containing a less quantity than it is represented at the time of such offer or sale to contain, or any article measured by dry measure that shall not be a heaped up measure in accordance with the provisions of this section, or who shall sell or offer for sale any article of dry measurement in other than a legal dry measure, or any article of liquid measurement in other than a legal liquid measurement, or in any measure which has not been inspected and sealed by the inspector of weights and measures in accordance with and pursuant to the provisions of this chapter, shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense; provided, however, that nothing herein contained shall be taken or construed or shall operate to dismiss, or in any wise affect the prosecution of any suit, now pending, for the violation of any provisions of said Section 2478 as originally enacted or as amended November 26, 1906.

"Sec. 2. This ordinance shall take effect and be in force from and after its passage and due publication."

The statement of claim filed is as follows:

"Plaintiff's claim is for a penalty not exceeding $100 for a violation by defendant of Section 2478 of the Revised Municipal Code of Chicago of 1905, in that the defendant on, to wit: the 23d day of October, A. D. 1907, did, through one George Bartels, a clerk for the above, practice deceit and fraud in the sale of certain potatoes, by offering for sale and selling a quantity of potatoes by dry measure, which said

George Bartels did then and there represent to be a peck measure, whereas in truth and in fact the said measure was not then and there heaped up measure and did not then and there contain a peck in quantity, and further, on, to wit: the day and place aforesaid, did, through one George Bartels, a clerk for the above, practice deceit and fraud in the sale of certain cranberries, by offering for sale and selling certain cranberries in a liquid measure, which is other than a legal dry measure.''

Aside from the ordinance the only evidence offered by the plaintiff in support of its case was the testimony of one L. H. Gallagher, a deputy city sealer for the city of Chicago. His testimony tended to show that he called at the grocery of the defendant, Albert J. Bartels, in the city of Chicago, and was waited on by George Bartels, a brother of and clerk for defendant, the defendant then being in the store. The witness asked the price of potatoes and was informed it was 20 cents a peck. He asked for a peck. George Bartels then put some potatoes in a peck measure and then into a bag and gave them to Gallagher. The latter saw the potatoes in the peck measure in which they were measured, and that the potatoes were not heaped up in the shape of a cone, but that two or three of the potatoes were above the top of the measure a half or three-quarters of an inch. Gallagher then put the potatoes back in the measure and said to the clerk, ''You see that is not a heaped up measure.'' Gallagher then weighed the potatoes on some scales there in the store and found they weighed 13 pounds and 13 ounces. He had not tested the scales, and could not say whether they were correct or not.

Gallagher then asked the clerk the price of cranberries and was informed it was ten cents a quart. He asked for two quarts, and the clerk measured in liquid measure two quarts of cranberries and put them in a bag and delivered them to Gallagher. The witness then poured the cranberries into a two quart dry measure, and called the clerk's attention to the fact that

they did not fill the measure. The witness then put the cranberries into the bag again, and put them beside the potatoes. He then called the defendant's attention to the shortage, and wrote the items, weight and shortage on one of defendant's billheads. The defendant then asked the witness what he was going to do about the matter. The witness replied that he would take the potatoes and cranberries and the liquid measure in which he measured the cranberries to his office to be used in evidence when this case came up, but that if he wished to sign a statement acknowledging the shortage, he would not take them, and defendant said he would sign it. Thereupon the witness wrote out the following, which the defendant Bartels signed:

"Keep this slip for reference.

CHICAGO, Oct. 23, 1907, 1:35 P. M.

Bought of

A. J. BARTELS,

Choice Meats and Fancy Groceries.
287 Ogden Avenue.
Phone West 734.

Terms Cash.                    Prompt Delivery.

1 Pk. Potatoes, weight 13 lbs. 13 oz........... .20
2 Qts. Cranberries, measured in liquid measure. .20
2 lbs. sugar, ¾ oz. short..................... .11

I sold the above bill of goods and the weights are as stated above.

ALBERT J. BARTELS."

Gallagher testified that he then left the potatoes and cranberries on the counter and that he paid nothing for them and did not offer to pay anything therefor.

The grounds urged for a reversal of the judgment are (1) that the ordinance of the city is void for want of power in the city to adopt it, and (2) that the evidence offered by the city, with all the inferences which may be drawn from it, does not prove a violation of the ordinance as charged in the statement of claim filed by the city of Chicago.

It is urged in behalf of defendant in error that the question of the validity of the ordinance cannot be raised because no propositions were submitted to the trial court to be held as law, and People v. Harrison, 223 Ill. 540, 545, is cited.

In this state, in cases on the law side of the court passing through the Appellate Courts to the Supreme Court, the judgments of the Appellate Courts are, under the statute, final and conclusive as to all matters of fact in controversy; and where the trial is upon issues of fact, then, unless the record shows that some question of law is raised by exceptions, by instructions in cases tried by a jury, or by propositions submitted to the trial court to be held as law in cases tried by the court without a jury, there is no question involved which the Supreme Court is permitted to review. But in cases appealed directly to the Supreme Court from the trial court, that court is authorized to pass both upon the facts and the law, though no propositions of law were held or refused by the trial court, and the inquiry then is, did the facts, as they appear in the record, and the law, authorize the finding and judgment below. Bradish v. Yocum, 130 Ill. 386, 391. In cases on the law side of the court, and in the first instance appealable to the Appellate Court, in order that the Supreme Court may see what was held to be the law of the case in the trial court, where the case was submitted to the court without a jury, questions of law must be embodied in written propositions to be held as the law, and preserved by exceptions to the rulings of the court thereon, unless such questions are otherwise saved in the trial court. West Chicago Park Commissioners v. Kincade, 64 Ill. App. 113, 116. But in this court the inquiry on appeal or writ of error is, did the facts, as they appear in the record, and the law, authorize the finding and judgment below. It was, therefore, not necessary, in our opinion, to have submitted written propositions to the trial court to be held as law, in order to raise in this court the question of the

validity of the ordinance. We must hold, then, that this question is properly before us for determination, in so far as it is necessary to be considered upon the evidence in the record.

The invalidity of the ordinance is not urged upon the ground that it conflicts with the provisions of Chapter 147, Revised Statutes of Illinois, entitled, "Weights & Measures." The contention is that the ordinance is void for the reason that the legislature had fixed a standard of weights and measures before the ordinance was adopted, and the city council was without power to provide penalties for making a sale or sales of the commodities in question not in accordance with the standards established by the statute. And, further, if the Cities and Villages Act which went into effect July 1, 1872, was broad enough to confer the power to adopt the ordinance in question, the Legislature of the State in passing the act of February 27, 1874, in relation to weights and measures revoked and recalled the provisions of the Cities and Villages Act which conferred the power on cities, and resumed the exercise of that power itself.

In our opinion the grounds urged against the validity of the ordinance are not well founded. We find nothing in the Act relative to weights and measures indicating an intention, expressly or impliedly, to change, alter or repeal any provision of the Cities and Villages Act. There is no necessary antagonism between the acts.

We think paragraphs 54, 55 and 66 of Section 1, Article V of the Cities and Villages Act contain grants of power, under which is found authority in the city council to enact the ordinance in question. In McPherson v. Village of Chebanse, 114 Ill. 46, the court in construing paragraph 66, and an ordinance of the village, say, at page 50 of the opinion: "The police regulations of a village may differ from those of the state upon the same subject, if they be not inconsistent therewith. (Cooley's Const. Lim. 198.) The ordinance does not

prohibit what the state permits.  There is no repugnancy between them.  The ordinance may consist with the statute.  The former differs from the latter in being more specific.  *  *  *  As a police regulation, in the interest of the good order and well being of the community the ordinance in our opinion, finds justification. See Cooley Const. Lim. 596, and authorities there cited.''

The ordinance is not inconsistent with the statute because it provides a standard of measurement for cranberries and prohibits cheating in the sale of the same, while the statute contains no specific mention of cranberries.

Paragraph 66 of section 1, Article V of the Cities and Villages Act, gives police power to the city.  It is well settled, we think, that under its police power any reasonable legislation by the city is proper regarding the public health, welfare, safety or morals of its inhabitants.   The public welfare and morals of the citizens are involved in giving true weights and measures in the sale of commodities.  McQuillin on Municipal Ordinance section 485, says:  ''Ordinances regulating the character of weights and measures to be used for coal, hay, lumber, cord wood and other bulky articles and meat, bread, and other specified market and food products, sold and delivered within the corporate limits, are strictly an exercise of the police power, and are common in all cities and towns.''   In People v. Wagner, 86 Mich. 594, 600, the court says:  ''The police power of a state is not confined to regulations looking to the preservation of life, health, good order and decency.  Laws providing for the detection and prevention of imposition and fraud, as a general proposition, are free from constitutional objection.  Tied. Lim. par. 89, p. 208.''   In O'Maley v. Borough of Freeport, 96 Penn. St. 24, 30, the court, in passing upon the power of the borough to make a regulation regarding the buying and selling of coal by weights and measures, said: ''We cannot understand how anyone can take excep-

tion either to the reasonableness, lawfulness, or con-
stitutionality of a regulation requiring people to buy
and sell by lawful weights and measures rather than
by guess. A proposition such as this is too plain for
discussion; it is determined at once by the application
of the ordinary principles of fair dealing and common
sense.''

In our opinion it is within the power of the city
council to pass such an ordinance as the one in ques-
tion, and the ordinance is valid.

The evidence in the record shows that the measure
by which the potatoes were sold was not "heaped
measure," and that the potatoes sold weighed only
thirteen pounds and thirteen ounces, instead of fifteen
pounds as required by the statute and the ordinance.
As to the cranberries the evidence is uncontroverted
that they were half a pint short, dry measure. As to
the method by which the evidence was obtained, no
fraud, deceit or inducement was resorted to otherwise
than manifesting a willingness to buy. We think the
evidence was sufficient to justify the judgment of the
court. City of Evanston v. Myers, 172 Ill. 266. The
judgment of the Municipal Court is affirmed.

*Affirmed.*