## Jacob Lanski, Defendant in Error, v. Chicago & North Western Railway Company, Plaintiff in Error.

## Gen. No. 17,620.

1. APPEALS AND ERRORS—*where Appellate Court may pass on assignments of error.* The Appellate Court may pass on all questions raised by the assignments of error, though no proposition of law were submitted to the court at the time of trial and none are preserved in the record.

2. CARRIERS—*when initial carrier is liable for loss under Carmack amendment.* The provisions of the Carmack Amendment (Act of Congress of June 29, 1906) to the Federal Interstate Commerce Act, declaring any common carrier receiving property for transportation from a point in one state to a point in another state to be liable to the holder of any receipt or bill of lading issued therefor for any loss or damage thereto caused by it or any carrier to which such property may be delivered or over whose line it may pass, are applicable where a shipment to another state is diverted or stopped within the state of shipment by direction of the consignee.

Error to the Municipal Court of Chicago; the HON. ROBERT H. SCOTT, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed June 30, 1913.

CALHOUN, LYFORD & SHEEAN, for plaintiff in error.

SABATH & LEVINSON, for defendant in error; LEO W. HOFFMAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case the defendant in error insists that this court cannot consider the contentions of the plaintiff in error because they turn on questions of law, and no propositions of law were submitted to the court at the time of trial and none are preserved in the record. We do not so hold. To preserve questions of law for the Supreme Court in cases in which that court has no jurisdiction to pass on controverted facts and which have been tried below without a jury, there must

have been propositions of law offered and passed on; but that is not necessary to enable the Appellate Court, which passes on both law and fact, to consider all questions raised by the assignments of error. This is the view always taken by the Appellate Courts of this District. See, for example, *City of Chicago v. Bartels,* 146 Ill. App. 180, p. 185.

We shall therefore consider this cause on its merits.

The suit was brought in the Municipal Court of Chicago by Jacob Lanski against the Chicago and North Western Railway Company for failure to deliver to the consignee, the Illinois Steel Company, the entire shipment made by the plaintiff Lanski of certain scrap iron. 85,800 pounds net weight were shipped, and only 38,600 pounds were received by the consignee. The damages to the plaintiff on account of the shortage it is conceded were $326.61, and for this amount judgment was rendered against the Chicago and North Western Railway Company, which it has sued out this writ of error to reverse.

The iron was shipped from West Chicago, Illinois, on November 25, 1909. A bill of lading or shipping receipt was issued by the Chicago and North Western Railway Company, in which the party from whom the goods were received is named as Jacob Lanski, the receiving point as West Chicago, Illinois, the consignee as Illinois Steel Company, the destination as Gary in the state of Indiana, and the route as the Chicago and North Western Railway. In this bill of lading the Chicago and North Western Railway Company "agrees to carry" 1 car scrap borings of the net weight of 85,800 lbs. "to its usual place of delivery at said destination if on its road, otherwise to deliver to another carrier on the route to said destination."

It is recited on the face of the bill of lading that all conditions printed on the back have been agreed to and accepted by the shipper and on the back among other "conditions" is the following:

"In issuing this bill of lading this Company agrees to transport only over its own line and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line.

No carrier shall be liable for loss, damage or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

The car was taken by the Chicago and North Western Railway Company over its road from West Chicago to 40th street in Chicago and there delivered by it to a connecting carrier, the Belt Railway Company of Chicago. By the Belt Railway it was delivered to the Elgin, Joliet and Eastern Railroad Company, and on December 3, 1909, was at South Chicago, Illinois, on the tracks of the Elgin, Joliet and Eastern Railroad, which runs to the plant of the Illinois Steel Company at South Chicago and to the plant of the same Company at Gary, Indiana. It was then weighed and the shortage discovered.

On December 6, 1909, the Distributing Agent of the Illinois Steel Company, as he testified, "ordered the car diverted or held at the plant of the Illinois Steel Company at South Chicago." He gave the order to the General Yard Master and the car was pushed from the track it was then on in the yards of the Elgin, Joliet and Eastern Railway Company at South Chicago to another track in the same yards a half a mile or more away.

The Distributing Agent testified that it was a standing order that any scrap received over the Elgin, Joliet and Eastern Railway at the plant at South Chicago would be held there for inspection, and anything that was suitable to use at that plant was to be used there and everything that was not was to be forwarded to Gary.

The defendant in error contends that under the law of Illinois, independently of Federal Statutes, this state of facts makes the initial carrier, the Chicago and North Western Railway Company, liable. This the plaintiff in error denies, insisting first, that there is a presumption that the unexplained shortage and loss took place while the shipment was in the hands of the terminal carrier, and, second, that for such a shortage or loss so taking place it is not, under its bill of lading and the law of Illinois, liable.

We do not think it necessary in this case to pass on these questions, for we have no doubt that the plaintiff in error is liable under the Carmack Amendment, so-called, to the Federal Interstate Commerce Act. The Carmack Amendment (Act of Congress of June 29, 1906) to the Act to Regulate Commerce (of February 24, 1887) is as follows:

"Any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed. Provided, that nothing in this Section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws.

The common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evi-

denced by any receipt, judgment or transcript thereof.''

The constitutionality and validity of this enactment have been upheld by the Supreme Court of the United States (*Atlantic Coast Line R. Co. v. Riverside Mills*, 219 U. S. 186), and are not challenged by the plaintiff in error. But it maintains that this legislation does not apply to the case at bar because of the diversion or stoppage of the shipment within the state at the order of the consignee. This, it is contended, turned the shipment from an interstate to an intrastate one, and relegated the matter to the common law as interpreted by the courts of Illinois.

We think the language of the Federal Act too plain to bear construction. It places the liability on any common carrier *receiving* property for transportation from a point in one state to a point in another. This scrap iron was so received, and after the plaintiff in error so *received* it, it became *"eo instanti"* the subject of interstate commerce and as such subject to the regulating power of Congress.'' *Smeltzer v. St. Louis & S. F. R. Co.*, 158 Fed. 649.

The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*